IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
AMY BRYANT, M.D., et al.,     )
                              )
          Plaintiffs,         )
                              )
     v.                       )          1:16CV1368
                              )
JIM WOODALL, et al.,          )
                              )
          Defendants.         )
```

## MEMORANDUM OPINION AND ORDER

Defendants have filed, pursuant to Federal Rule of Civil Procedure 56(d), a Verified Motion for an Order Deferring Any Further Briefing on and Postponing Any Hearing or Decision on Plaintiffs' Motion for Summary Judgment until Defendants Have Had an Opportunity to Conduct Limited, Expedited Discovery and to Gather Documents and Evidence Necessary to Allow Them to Respond to Plaintiffs' Summary Judgment Motion. (Docket Entry 21 ("Rule 56(d) Motion").) For the reasons that follow, the Court will grant Defendants' Rule 56(d) Motion.

### INTRODUCTION

By statute, North Carolina generally makes it a crime to perform an abortion, see N.C. Gen. Stat. §§ 14-44, 14-45, but nonetheless recognizes the legality of all abortions:

(1) "during the first 20 weeks of a woman's pregnancy, . . . when the procedure is performed by a qualified physician licensed

to practice medicine in North Carolina in a hospital or clinic certified by the Department of Health and Human Services to be a suitable facility for the performance of abortions," N.C. Gen. Stat. § 14-45.1(a) (emphasis added); and

(2) "<u>after the twentieth week of a woman's pregnancy</u>, . . . when the procedure is performed by a qualified physician licensed to practice medicine in North Carolina in a hospital licensed by the Department of Health and Human Services, <u>if there is a medical emergency as defined by [N.C. Gen. Stat. §] 90-21.81(5)</u>," N.C. Gen. Stat. § 14-45.1(b) (emphasis added); <u>see also</u> N.C. Gen. Stat. § 90-21.81(5) ("Medical emergency.--A condition which, in reasonable medical judgment, so complicates the medical condition of the pregnant woman as to necessitate the immediate abortion of her pregnancy to avert her death or for which a delay will create serious risk of substantial and irreversible physical impairment of a major bodily function, not including any psychological or emotional conditions.  For purposes of this definition, no condition shall be deemed a medical emergency if based on a claim or diagnosis that the woman will engage in conduct which would result in her death or in substantial and irreversible physical impairment of a major bodily function.").

Plaintiffs, three North Carolina-licensed medical doctors and a nonprofit corporation with health centers in North Carolina (<u>see</u> Docket Entry 1, ¶¶ 7-10), have challenged this statutory scheme, in

an action against Defendants, two North Carolina District Attorneys, the President of the North Carolina Medical Board, and the Secretary of the North Carolina Department of Health and Human Services (see id., ¶¶ 12-15). Plaintiffs' Complaint alleges that, "[i]n a normally progressing pregnancy, viability typically does not occur before approximately 24 weeks from the woman's last menstrual period." (Id., ¶ 26 (emphasis added); see also Docket Entry 13-1, ¶¶ 6 ("The opinions in this declaration are [Plaintiff Amy Bryant's] expert opinions."), 15 ("Pregnancy is measured from the first day of a woman's last menstrual period, also referred to as 'lmp.' . . . Viability generally occurs at approximately 24 weeks lmp."), 16 (opining that, by restricting abortions after 20 weeks of pregnancy except for medical emergencies, North Carlina law "prohibits abortion at a point in pregnancy when no fetus is viable"). The Complaint seeks "a declaratory judgment that [North Carolina's above-quoted abortion] statutes . . . are unconstitutional as applied to previability abortions, under the Fourteenth Amendment to the United States Constitution" (Docket Entry 1, ¶ 55 (emphasis added)), as well as "a permanent injunction restraining Defendants, their employees, agents, and successors from enforcing in any way state law limiting Plaintiffs' ability to provide previability abortions" (id., ¶ 56 (emphasis added)) and an award of their "reasonable costs and attorney's fees" (id., ¶ 57).

-3-

Defendants accepted service of process on December 7, 2016 (see Docket Entry 16 at 1), resulting in the initial establishment of a responsive pleading deadline of December 28, 2016, Fed. R. Civ. P. 12(a)(1)(A)(i).  Two weeks before that deadline, Plaintiffs moved for summary judgment (Docket Entry 13), which (in the normal course) would have required Defendants to file their summary judgment response by January 13, 2017, M.D.N.C. LR 7.3(f).  At Defendants' request and with Plaintiffs' consent (see Docket Entry 19), the Court extended Defendants' responsive pleading deadline to January 13, 2017, and their summary judgment response deadline to January 27, 2017 (Text Order dated Dec. 27, 2016).

Thereafter, Defendants timely answered (Docket Entry 20) and timely filed their Rule 56(d) Motion requesting an extension of their summary judgment response deadline until 30 days after a 60-day discovery period (see Docket Entry 21 at 1-2).  Defendants' Rule 56(d) Motion indicates that they wish to conduct discovery on (1) fetal viability beginning at 20 weeks, (2) fetal susceptibility to pain, (3) increased health risks for women who have abortions after 20 weeks, and (4) Plaintiffs' standing to bring this action.  (See id. at 7, 9 (stating that Defendants sought Plaintiffs' consent "to a brief, sixty-day period of discovery limited to" the foregoing items (1), (2), and (3)), 10-11 (describing Defendants' interest in pursuing discovery as to "whether [] [P]laintiffs have standing" and providing examples of such discovery).)  The Court

stayed Defendants' summary judgment response deadline, pending completion of briefing on and final resolution of their Rule 56(d) Motion. (Text Order dated Jan. 26, 2017.) Plaintiffs have responded in opposition to Defendants' Rule 56(d) Motion (Docket Entry 27) and Defendants have replied (Docket Entry 28).[1]

DISCUSSION

"As a general proposition, summary judgment is appropriate only after adequate time for discovery." Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt., 721 F.3d 264, 280 (4th Cir. 2013) (en banc) (emphasis added) (internal quotation marks omitted) (vacating entry of summary judgment for the plaintiff on its free speech claim). Accordingly, although (absent a contrary local rule or court order) a party may move for summary judgment before discovery closes, see Fed. R. Civ. P. 56(b), "when a party lacks material facts necessary to combat a summary judgment motion, she may file an 'affidavit or declaration that, for specified reasons, the party cannot present facts essential to justify its opposition,'" McCray v. Maryland Dep't of Transp., Md. Transit Admin., 741 F.3d 480, 483 (4th Cir. 2014) (brackets omitted) (quoting Fed. R. Civ. P. 56(d)) (vacating entry

---

[1] In addition, without objection from the parties, the Court permitted the filing of an amicus brief by the President Pro Tempore of the North Carolina Senate and the Speaker of the North Carolina House of Representatives. (See Text Order dated Feb. 28, 2017; see also Docket Entry 29 (amicus brief).)

-5-

of summary judgment against the plaintiff on her Title VII claim).[2] In particular, where (as here) a party faces a summary judgment motion before <u>any</u> discovery has occurred, the party takes "the proper course when it file[s a verified] Rule 56([d]) [motion], stating that it could not properly oppose summary judgment without a chance to conduct discovery." <u>Greater Balt. Ctr.</u>, 721 F.3d at 281 (ellipsis and internal quotation marks omitted).

"Further, such motions are <u>broadly favored</u> and should be <u>liberally granted</u> in order to protect non-moving parties from premature summary judgment motions." <u>McCray</u>, 741 F.3d at 484 (internal quotation marks omitted) (emphasis added); <u>see also</u> <u>In re PHC, Inc. S'holder Litig.</u>, 762 F.3d 138, 144 (1st Cir. 2014) ("'Typically, when the parties have no opportunity for discovery, denying the Rule 56([d]) motion and ruling on a summary judgment motion is likely to be an abuse of discretion.'" (quoting <u>CenTra, Inc. v. Estrin</u>, 538 F.3d 402, 420 (6th Cir. 2008))); <u>Greater Balt. Ctr.</u>, 721 F.3d at 280 ("Chief among its errors was the district court's award of summary judgment to the [plaintiff] without allowing the [defendant] any discovery."); <u>Doe v. Abington Friends Sch.</u>, 480 F.3d 252, 257 (3d Cir. 2007) ("District courts usually grant properly filed Rule 56([d]) motions as a matter of course."

---

[2] "The language of Rule 56(d) appeared in Rule 56(f) before amendments in 2010, but these amendments made no substantial change to the rule." <u>McCray</u>, 741 F.3d at 484 n.2.

(internal quotation marks omitted)); Burlington N. Santa Fe R.R. Co. v. Assiniboine & Sioux Tribes of the Fort Peck Reservation, 323 F.3d 767, 773 (9th Cir. 2003) ("Where, however, a summary judgment motion is filed so early in the litigation, before a party has had any realistic opportunity to pursue discovery relating to its theory of the case, district courts should grant any Rule 56([d]) motion fairly freely."); Wichita Falls Office Assocs. v. Banc One Corp., 978 F.2d 915, 919 n.4 (5th Cir. 1992) ("[C]ontinuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course unless the non-moving party has not diligently pursued discovery of the evidence." (internal quotation marks omitted)).

Notably, the Center for Reproductive Rights ("CRR"), whose attorneys represent Plaintiff Bryant here (see, e.g., Docket Entry 27 at 15[3]), also participated in the Greater Balt. Ctr. litigation, see Appellants/Cross-Appellees' Brief for the En Banc Court at 1, Greater Balt. Ctr., 721 F.3d 264 (Nos. 11-1111, 11-1185), 2012 WL 3812702, at unnumbered cover page (identifying CRR attorney as counsel for the appellants/cross-appellees). In that appeal, a CRR

---

[3] Plaintiffs' brief opposing Defendants' Rule 56(d) Motion begins assigning sequential arabic numerals only to pages after the cover page, table of contents, and table of authorities (all of which bear sequential lower case roman numerals), but the footer appended to that brief upon its docketing via the CM/ECF system assigns sequential arabic numerals beginning with the cover page. (See Docket Entry 27.) In this Memorandum Opinion, citations to that brief refer to the page numbers in the CM/ECF footer.

-7-

attorney contended to the United States Court of Appeals for the Fourth Circuit that "the district court's ruling on the merits of [the plaintiff's] motion for partial summary judgment was premature because it came before [the defendants] had the opportunity to conduct <u>any</u> discovery or fully develop expert testimony on key factual issues." <u>Id.</u> at 45 (emphasis added); <u>see also</u> <u>id.</u> at 45 n.15 (noting that the plaintiff "filed [its] motion for partial summary judgment before the deadline for the [defendants] to respond to the [c]omplaint had expired and, thus, before the opportunity to conduct discovery even arose"). According to the CRR attorney, the defendants in the <u>Greater Balt. Ctr.</u> case "could not test the veracity of [the plaintiff's] factual allegations because the district court denied [the defendants] the opportunity to conduct discovery. . . . This lack of discovery improperly prejudiced the [defendants] and require[d] reversal of the district court's judgment." <u>Id.</u> at 46.

Similarly, in prior appellate litigation (conducted even before the issuance of the Fourth Circuit's decisions in <u>McCray</u> and <u>Greater Balt. Ctr.</u>, which (as quoted above) strongly counsel district courts to grant relief under Rule 56(d) when no discovery has occurred), the legal arm of the American Civil Liberties Union of North Carolina ("ACLU-NC") (which represents Plaintiffs in this action (<u>see, e.g.</u>, Docket Entry 27 at 14-15)) argued to the Fourth Circuit that "[e]ntry of [s]ummary [j]udgment [a]gainst [its

-8-

client], [w]ithout [p]ermitting [h]er to [c]onduct [a]ny [d]iscovery, [w]as [i]nappropriate." Brief of Appellant at 21, Willis v. Town of Marshall, 426 F.3d 251 (4th Cir. 2005) (Nos. 03-2252, 04-1240), 2004 WL 3200530, at *21 (4th Cir. Apr. 12, 2004); see also id. at unnumbered cover page (listing attorney with ACLU-NC as "Counsel for Appellant"). Moreover, in doing so, the ACLU-NC attorney asserted that decisions "allow[ing] summary judgment to be entered in the absence of discovery . . . have arisen predominantly in the context of frivolous litigation such as pro se prisoner cases." Id. at 24 (emphasis added). Ultimately, in that case (as it later did in McCray and Greater Balt. Ctr.), the Fourth Circuit "conclude[d] that the granting of summary judgment was premature." Willis, 426 F.3d at 263; see also id. ("Because the district court granted summary judgment before allowing any discovery, [the plaintiff] had no opportunity to demonstrate that [evidence supporting her claim existed].").

In the face of the foregoing authority[4] and prior litigation positions of organizations with whom Plaintiffs have partnered in this case, all of which supports the view that the Court should not resolve Plaintiffs' summary judgment motion without first allowing Defendants some chance for discovery, Plaintiffs have insisted that

---

[4] Regrettably, Plaintiffs did not actually "face" the above-discussed authority, including the recent Fourth Circuit opinions in McCray and Greater Baltimore Ctr. (See Docket Entry 27 at 5-14 (omitting any reference to said cases).)

-9-

the Court should deny Defendants' Rule 56(d) Motion, because North Carolina's limitation on abortions after 20 weeks "must be struck down under controlling Supreme Court precedent" (Docket Entry 27 at 14) and Defendants "cannot propose to provide this Court with any evidence that would alter th[at] conclusion" (id.). Specifically, Plaintiffs have argued that "the only material fact at issue before this Court[ is whether] the 20-week ban [on abortions except for medical emergencies] prohibits <u>some</u> previability abortions." (Id. at 5 (emphasis added).)  According to Plaintiffs, no dispute exists between the parties on this question, because "Defendants concede that fetal viability is a determination that must be made by a physician on a case-by-case basis and do not and cannot claim that they will provide the Court with evidence that <u>all</u> fetuses reach viability immediately after the twentieth week of pregnancy." (Id. (emphasis added); <u>see also</u> <u>id.</u> at 8 ("Defendants concede this very point [i.e., that the determination of fetal viability lies exclusively with the attending physician] in their [A]nswer." (citing Docket Entry 20, ¶ 27)).)  Plaintiffs' efforts have not persuaded the Court to deny Defendants all right to discovery.

As an initial matter, Defendants have <u>not</u> made the sweeping concession about the determination of fetal viability attributed to them by Plaintiffs.  To the contrary, Defendants only made the more limited admission "that the moment of fetal viability is determined by a licensed physician <u>operating within the bounds of law, as</u>

-10-

prescribed by the State's duly authorized law makers. [They] further admit[ted] that the moment of fetal viability varies from pregnancy to pregnancy, within limitations, depending on various factors." (Docket Entry 20, ¶ 27 (emphasis added).)[5]

Additional issues arise in connection with Plaintiffs' above-quoted framing of "the only material fact at issue" (Docket Entry 27 at 5), as well as their related contention that the impossibility of showing that "all fetuses reach viability immediately after the twentieth week of pregnancy" (id.) requires the Court to enter a pre-discovery judgment invalidating North Carolina's restriction on abortions after 20 weeks "under controlling Supreme Court precedent" (id. at 14). To support their pronouncements about such matters, Plaintiffs principally rely on three decisions: Planned Parenthood of Se. Pa. v. Casey, 505 U.S. 833 (1992), Colautti v. Franklin, 439 U.S. 379 (1979), and Isaacson v. Horne, 716 F.3d 1213 (9th Cir. 2013). (See Docket Entry 27 at 7-11.) The last of those decisions involved an Arizona law, which (like the challenged North Carolina statutes) "forb[ade], except in

---

[5] Plaintiffs' Complaint alleges that "[v]iability is a determination that must be made by a physician, and it will vary from pregnancy to pregnancy, depending on the health of the woman and the fetus." (Docket Entry 1, ¶ 27.) "Except as expressly admitted [in the above-quoted language from their Answer, D]efendants den[ied] the allegations contained in paragraph 27 of [the] Complaint." (Docket Entry 20, ¶ 27.) Deciding which side's view on this subject must prevail remains for another day, but Plaintiffs cannot re-write Defendants' Answer to circumvent the process for resolving such disputes (which includes discovery).

-11-

a medical emergency, abortion of a fetus determined to be of a gestational age of at least twenty weeks." Isaacson, 716 F.3d at 1217.  The United States Court of Appeals for the Ninth Circuit held that "Arizona's twenty-week law [wa]s a preclusion prior to fetal viability and [wa]s thus invalid under binding Supreme Court precedent."  Id.  In so holding, the Ninth Circuit heavily relied (like Plaintiffs) on Casey, particularly this statement:  "'Before viability, the State's interests are not strong enough to support a prohibition of abortion or the imposition of a substantial obstacle to the woman's effective right to elect the procedure.'"  Id. at 1222 (quoting Casey, 505 U.S. at 846).

However, as a concurring judge pointed out, in Isaacson:

> [T]he parties d[id] not dispute that the 20-week line Arizona ha[d] drawn is three or four weeks prior to viability.  [The d]efendants d[id] not argue that the 20 to 23 or 24 week fetuses protected by the statute are viable, and offer[ed] no evidence to that effect.  [The Ninth Circuit was] bound, in th[at] particular case, by the absence of any factual dispute as to whether the fetuses to be killed between gestational ages 20 and 23 or 24 weeks are viable. . . .  [N]on-viability [wa]s the underlying factual assumption of both parties in [the Isaacson] case.  For th[at] case, Arizona concede[d] non-viability.

Id. at 1233 (Kleinfeld, S.J., concurring).[6]

---

[6] Thus, contrary to Plaintiffs' suggestion, Isaacson did not determine that Supreme Court precedent mandates the invalidation of a state law if 99.99% (but not "all") of the abortions it restricts involve viable fetuses, because .01% (i.e., "some") of the restricted abortions involve non-viable fetuses.  Instead, Isaacson decided that, where a State concedes that all of the abortions
(continued...)

Contrastingly, in Defendants' Rule 56(d) Motion, their counsel has averred as follows:

> [Defendants] believe[] that the evidence which [they] propose[] to develop through limited, expedited discovery will show that the state of medical and scientific knowledge has advanced dramatically since [the Supreme Court's prior rulings on abortion] and that, inter alia, fetal viability is now known to occur *before* the point identified . . . in [Plaintiffs'] experts' affidavits. . . . [D]efendants wish to . . . put[] on their own evidence as to when viability begins . . . .

(Docket Entry 21 at 12 (emphasis in original).) Given this significant distinction between the litigation approach taken by the defendants in Isaacson and the one forecast by Defendants' counsel here, the Court cannot conclude that Isaacson or Casey precludes Defendants from pursuing discovery before responding to Plaintiffs' summary judgment motion.

Plaintiffs' brief opposing Defendants' Rule 56(d) Motion also quotes Colautti for the proposition that a state may not "dictate

---

[6](...continued)
prohibited by a law involve non-viable fetuses, the law cannot stand in light of Supreme Court precedent. Nor has the Court found language in Supreme Court decisions about abortion, including Casey, that stretches as far on this front as Plaintiffs apparently would have this Court go. Defendants also seem to have resorted to hyperbole by arguing in reply that, if allowed discovery, they will "attempt to obtain evidence, *inter alia*, that **all** post-twenty week abortions involve a viable fetus." (Docket Entry 28 at 2 (bold emphasis added).) Any such attempt likely would run directly into an admission Defendants did make in their Answer. (Compare Docket Entry 1, ¶ 28 ("Some fetuses are never viable, such as those with fatal anomalies . . . ."), with Docket Entry 20, ¶ 28 ("Given the [Complaint's] use of the term 'fatal,' . . . [D]efendants admit the allegations contained in paragraph 28 of the . . . Complaint.").)

where the point of viability lies, because 'the determination of whether a particular fetus is viable is, and must be, a matter for the judgment of the responsible attending physician.'" (Docket Entry 27 at 7 (quoting Colautti, 439 U.S. at 396).) Although they accurately quoted Colautti, Plaintiffs wrenched that language from its context, including the next sentence of the decision, which appears to acknowledge that, consistently with the Constitution, States may place some limits on the range within which doctors may exercise their judgment about viability: "State regulation that impinges upon this determination [i.e., of a fetus's viability], if [such regulation] is to be constitutional, must allow the attending physician the room he needs to make his best medical judgment." Colautti, 439 U.S. at 397 (internal quotation marks omitted).

Moreover, the Supreme Court (albeit in fractured fashion) later reversed a decision that relied on Colautti to strike down a state law "requir[ing] that, prior to performing an abortion on any woman whom a physician has reason to believe is 20 or more weeks pregnant, the physician ascertain whether the fetus is viable by performing such medical examinations and tests as are necessary to make a finding of the gestational age, weight, and lung maturity of the unborn child." Webster v. Reproductive Health Servs., 492 U.S. 490, 501 (1989) (internal quotation marks omitted); see also id. at 517 (stating, in plurality opinion, that state law mandating certain viability-related tests (approved by the majority)

-14-

"superimpose[s] state regulation on the medical determination [of] whether a particular fetus is viable").

Further, the Supreme Court now has stated (in affirming a federal ban on partial-birth abortion procedures) that it "give[s] state and federal legislatures wide discretion to pass legislation in areas where there is medical and scientific uncertainty. . . . The law need not give abortion doctors unfettered choice in the course of their medical practice, nor should it elevate their status above other physicians in the medical community." Gonzales v. Carhart, 550 U.S. 124, 163 (2007).

Given such context, questioning the degree to which Colautti prevents a State from setting parameters on a physician's ability to deem a fetus non-viable, at a minimum, does not constitute a frivolous litigation position warranting denial of any opportunity for discovery. Indeed, even Justice Kennedy, who co-authored the Casey opinion on which Plaintiffs rely, joined the Webster plurality opinion which pilloried Colautti as among the decisions that improperly "mak[es] constitutional law in th[e abortion] area a virtual Procrustean bed." Webster, 492 U.S at 517.[7]

---

[7] "Procrustes was a 'legendary robber of ancient Greece who forced his victims to fit a certain bed by stretching or lopping off their legs.' . . . [A] 'procrustean bed' means an arbitrary standard to which precise conformity is forced." Abraham v. Piechowski, 13 F. Supp. 2d 870, 878 n.7 (E.D. Wis. 1998) (quoting Webster's Third New Int'l Dictionary at 1809 (1986)).

-15-

On an even more fundamental level, the United States Court of Appeals for the Eighth Circuit recently offered this critique of the entire "viability" framework:

> The viability standard is clearly on a collision course with itself. As medical science becomes better able to provide for the separate existence of the fetus, the point of viability is moved further back toward conception. . . . [S]tates in the 1970s lacked the power to ban an abortion of a 24-week-old-fetus because that fetus would have not satisfied the viability standard of that time period. Today, however, that same fetus would be considered viable, and states would have the power to restrict such abortions. . . . [L]egislatures are better suited to make the necessary factual judgments in this area. . . . Courts are ill-suited to second-guess these legislative judgments.

Edwards v. Beck, 786 F.3d 1113, 1118 (8th Cir. 2015) (brackets, citations, and internal quotation marks omitted); see also Webster, 492 U.S. at 518-19 (criticizing use of "viability" as a constitutional standard given that it is "not found in the text of the Constitution or in any place else one would expect to find a constitutional principle" and denying the existence of a principled justification for judicial enforcement of "a rigid line allowing state regulation after viability but prohibiting it before viability"); Isaacson, 716 F.3d at 1233 (Kleinfeld, S.J., concurring) (describing constitutionalization of "viability" as "an odd rule, because viability changes as medicine changes," and observing that, between the ruling in Roe v. Wade, 410 U.S. 113 (1973), "and the time Casey was decided in 1992, viability dropped

-16-

from 28 weeks to 23 or 24 weeks, because medical science became more effective at preserving the lives of premature babies").

Keenly aware of such criticisms, Plaintiffs properly have noted that, "if a precedent of the Supreme Court has direct application in a case, lower courts should follow the case which directly controls 'leaving to the Supreme Court the prerogative of overruling its own decisions.'" (Docket Entry 27 at 11 (brackets omitted) (quoting Agostini v. Felton, 521 U.S. 203, 237 (1997)).) Granting Defendants' Rule 56(d) Motion, however, does not overrule a Supreme Court decision; instead, allowing Defendants to conduct discovery on viability simply recognizes "the importance of the parties, particularly the [S]tate, developing the record in a meaningful way so as to present a real opportunity for the [C]ourt to examine viability, case by case, as viability steadily moves back towards conception." Edwards, 786 F.3d at 1119.

Similarly, although Defendants' planned pursuit of "discovery [to] show that an infant *in utero* begins to feel pain . . . quite probably by the twenty-week gestational age point" (Docket Entry 21 at 12) and to "show that the risk to maternal health increases exponentially as one moves beyond the first trimester of pregnancy to the latter part of the second trimester" (id.) appears to hold a lesser likelihood of ultimately affecting the disposition of Plaintiffs' summary judgment motion than discovery into viability-related matters, see Isaacson, 716 F.3d at 1234-35 (Kleinfeld,

-17-

S.J., concurring), the Court will allow discovery in those two areas as well. "As the Supreme Court has observed, 'the law may change or clarify in the midst of litigation.' Due to this potential mutability, unfavorable precedent does not necessarily mean that [Defendants] ha[ve] no reasonable grounds for [litigating an issue]. A contrary rule would chill parties from advocating for changes in the law." Baker v. Windsor Republic Doors, No. 1:06CV1137, 2009 WL 2461383, at *6 (W.D. Tenn. Aug. 10, 2009) (brackets and citation omitted) (quoting Christiansburg Garment Co. v. Equal Emp't Opportunity Comm'n, 434 U.S. 412, 422 (1978)); see also Babyage.com, Inc. v. Center for Envtl. Health, 90 F. Supp. 3d 348, 358 (M.D. Pa. 2015) ("[E]ven if we assume *arguendo* that the [plaintiff's] claim is barred under the available precedent, claims based on 'a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law' are explicitly authorized by the Federal Rules. . . . Because the [p]laintiffs [sic] claim is asserted under a [constitutional provision] marked by a history of controversy and fluidity, the [c]ourt is not prepared to label [the plaintiff's litigation position] 'frivolous' under Rule 11." (quoting Fed. R. Civ. P. 11(b)(2))).[8]

---

[8] Indeed, as Defendants well-stated in their reply, if Plaintiffs "succeed[ed] in persuading this Court to prevent . . . [D]efendants from putting the latest scientific and medical information on these matters into the record in this case, then they would succeed in preventing any subsequent appellate court, (continued...)

-18-

Case 1:16-cv-01368-WO-LPA   Document 31   Filed 04/07/17   Page 18 of 20

Finally, Plaintiffs have opposed discovery on standing, asserting that their affidavits "ma[k]e a sufficient showing to establish standing." (Docket Entry 27 at 12.) The Court, however, agrees with Defendants that they "are entitled to *test* [the] assertions [in Plaintiffs' affidavits] through discovery." (Docket Entry 28 at 4 (emphasis in original).) "Although standing generally is a matter dealt with at the earliest stages of litigation, usually on the pleadings, it sometimes remains to be seen whether the factual allegations . . . necessary for standing will be supported adequately by the evidence adduced at trial." Gladstone Realtors v. Village of Bellwood, 441 U.S. 91, 115 n.31 (1979); see also MKB Mgmt. Corp. v. Burdick, No. 1:13CV71, 2013 WL 6147204, at *5 (D.N.D. Nov. 15, 2013) ("[A]lthough it appears [the] plaintiffs' standing is well-established, some discovery regarding that issue may be undertaken if the State is going to contest it."), aff'd, 2014 WL 11516246 (D.N.D. Jan. 28, 2014).

CONCLUSION

Given the representations in Defendants' Rule 56(d) Motion regarding their need for discovery to respond to Plaintiffs' summary judgment motion and the Fourth Circuit's holding that "such motions are 'broadly favored and should be liberally granted,'"

---

[8](...continued)
including the Supreme Court, from even being able to exercise . . . 'its prerogative of modifying its own decisions.'" (Docket Entry 28 at 4 (brackets omitted) (quoting Docket Entry 27 at 11).)

-19-

McCray, 741 F.3d at 484 (quoting Greater Balt. Ctr., 721 F.3d at 281), the Court concludes Defendants should have the opportunity for some discovery before the summary judgment process resumes.

**IT IS THEREFORE ORDERED** that Defendants' Rule 56(d) Motion (Docket Entry 21) is **GRANTED**. Defendants may conduct discovery until June 6, 2017, regarding: (1) whether any fetuses between 20 and 26 weeks in North Carolina meet the definition of "viable" adopted by the Supreme Court, and, if so, how many and when; (2) whether fetuses between 20 and 26 weeks experience pain and, if so, when and to what degree; (3) whether abortions of fetuses between 20 and 26 weeks pose any greater health risks to pregnant women than abortions of fetuses before 20 weeks and, if so, when and to what degree; and (4) Plaintiffs' standing to bring this action.[9] Defendants shall file any response to Plaintiffs' Motion for Summary Judgment (Docket Entry 13) by July 6, 2017.

                                            /s/ L. Patrick Auld
                                             **L. Patrick Auld**
                            **United States Magistrate Judge**

April 7, 2017

---

[9] For items (1), (2), and (3) above, the Court selected 26 weeks as the upper end of the inquiry, because the Complaint does not allege that Plaintiffs perform third-trimester abortions (see Docket Entry 1, ¶¶ 7-10), and the two Plaintiffs who have offered affidavits both averred only that they perform first- and second-trimester abortions (see Docket Entry 13-1, ¶ 8; Docket Entry 13-3, ¶ 6). In addition, the Court focused item (1) on fetuses in North Carolina, because location-specific considerations (such as the availability of medical care) would appear to impact viability as defined by the Supreme Court, see Casey, 505 U.S. at 870.

-20-