IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| **AMY BRYANT, M.D., M.S.C.R.**; **BEVERLY GRAY, M.D.**; **ELIZABETH DEANS, M.D.**, on behalf of themselves and their patients seeking abortions; and **PLANNED PARENTHOOD SOUTH ATLANTIC**, on behalf of itself, its staff and its patients seeking abortions,<br><br>*Plaintiff,*<br><br>v.<br><br>**JIM WOODALL**, in his official capacity as District Attorney ("DA") for Prosecutorial District ("PD") 15B; **ROGER ECHOLS**, in his official capacity as DA for PD 14; **ELEANOR E. GREENE, M.D., M.P.H.**, in her official capacity as President of the North Carolina Medical Board; **RICH BRAJER**, in his official capacity as Secretary of the North Carolina Department of Health and Human Services; and their employees, agents, and successors,<br><br>*Defendants,* | Case No. 1:16-cv-01368-WO-LPA |

**AMICI BRIEF OF THE HONORABLE PHILIP E. BERGER, IN HIS OFFICIAL CAPACITY AS PRESIDENT PRO TEMPORE OF THE NORTH CAROLINA SENATE, AND THE HONORABLE TIMOTHY K. MOORE, IN HIS OFFICIAL CAPACITY AS SPEAKER OF THE NORTH CAROLINA HOUSE OF REPRESENTATIVES, IN SUPPORT OF GRANTING RELIEF FROM JUDGMENT**

TABLE OF CONTENTS

Table of Authorities ........................................................................................ iii

Introduction .................................................................................................... 1

Background .................................................................................................... 3

    A.    North Carolina laws protect unborn children from abortion after 20 weeks' gestation. ............................................................................... 3

    B.    North Carolina statutes were enjoined under *Roe* and *Casey*, but those precedents are now overruled. .................................................. 4

Argument ........................................................................................................ 6

    I.    The Court should vacate the orders and judgment enjoining enforcement of North Carolina statutes protecting unborn life. The injunction was based upon overruled precedent, and it is not just or equitable to apply it prospectively. .......................................... 6

    II.    If this Court is not inclined to vacate the injunction sua sponte yet no party will defend the laws, the Court should allow amici an opportunity to intervene to file a Rule 60(b)(5) motion. ................... 11

Conclusion ................................................................................................... 13

Certificate of Compliance ............................................................................ 16

# TABLE OF AUTHORITIES

**Cases**

*Agostini v. Felton*,
  521 U.S. 203 (1997) .................................................................................. 8, 9

*Aguilar v. Felton*,
  473 U.S. 401 (1985) ........................................................................................ 8

*Benjamin v. Jacobson*,
  172 F.3d 144 (2d Cir. 1999) ............................................................................ 6

*Berger v. North Carolina State Conference of the NAACP*,
  142 S. Ct. 2191 (2022) ............................................................................ 12, 13

*Bryant v. Woodall*,
  1 F.4th 280 (4th Cir. 2021) ............................................................................. 5

*Bryant v. Woodall*,
  363 F. Supp. 3d 611 (M.D.N.C. 2019) ................................................... 5, 9, 10

*Dobbs v. Jackson Women's Health Organization*,
  142 S. Ct. 2228 (2022) ............................................................................passim

*Fort Knox Music Inc. v. Baptiste*,
  257 F.3d 108 (2d Cir. 2001) ............................................................................ 8

*Heller v. Doe*,
  509 U.S. 312 (1993) ........................................................................................ 2

*Holiday Inns, Inc. v. Holiday Inn*,
  645 F.2d 239 (4th Cir. 1981) .......................................................................... 7

*Horne v. Flores*,
  557 U.S. 433, 447 (2009) ................................................................................ 8

*Hudson v. Pittsylvania County, Virginia*,
  774 F.3d 231 (4th Cir. 2014) .......................................................................... 7

*Kingvision Pay-Per-View Ltd. v. Lake Alice Bar*,
  168 F.3d 347 (9th Cir. 1999) .......................................................................... 8

*L.J. v. Wilbon*,
  633 F.3d 297 (4th Cir. 2011) .......................................................................... 9

*Planned Parenthood of Southeastern Pennsylvania v. Casey*,
  505 U.S. 833 (1992) ................................................................................ 2, 5, 9

*Ransom v. Nationstar Mortgage, LLC*,
  No. PX 15-1647, 2016 WL 7474533 (D. Md. Dec. 29, 2016) .......................... 8

*Roe v. Wade*,
    410 U.S. 113 (1973) .................................................................................... 2, 5

*SisterSong Women of Color Reproductive Justice Collective v. Governor of Georgia*,
    No. 20-13024, 2022 WL 2824904 (11th Cir. July 20, 2022) ......................... 10

*Thompson v. U.S. Department of Housing & Urban Development*,
    404 F.3d 821 (4th Cir. 2005) ....................................................................... 6, 7

*United States v. Jacobs*,
    298 F.2d 469 (4th Cir. 1961) ............................................................................ 7

*United States v. Swift & Co.*,
    286 U.S. 106 (1932) .......................................................................................... 7

*Valero Terrestrial Corp. v. Paige*,
    211 F.3d 112 (4th Cir. 2000) ............................................................................ 9

**Statutes**

N.C. Gen. Stat. § 114-2(1) ....................................................................................... 3

N.C. Gen. Stat. § 14-44 ...................................................................................passim

N.C. Gen. Stat. § 14-45 ........................................................................... 1, 4, 5, 10

N.C. Gen. Stat. § 14-45.1 ........................................................................ 1, 4, 5, 10

N.C. Gen. Stat. § 1-72.2 ........................................................................................ 12

**Other Authorities**

@JoshStein\_, Twitter (July 21, 2022, 10:29 AM ),
    https://twitter.com/JoshStein\_/status/ 1550125817639735296?s=20 .......... 13

Press Release, Josh Stein, *Attorney General Josh Stein Will Not Ask Court to Limit Women's Freedom* (July 21, 2022), https://ncdoj.gov/attorney-general-josh-stein-will-not-ask-court-to-limit-womens-freedom/ ................. 13

*State Facts About Abortion: North Carolina*, Guttmacher Institute,
    https://www.guttmacher.org/fact-sheet/state-facts-about-abortion-north-carolina ............................................................................................................ 1

Wright & Miller, 11 Fed. Prac. & Proc. Civ. § 2865 (3d ed. 2022) ..................... 7

**Rules**

Fed. R. Civ. P. 60 ................................................................................................ 7, 11

Philip E. Berger, in his official capacity as President Pro Tempore of the North Carolina Senate, and Timothy K. Moore, in his official capacity as Speaker of the North Carolina House of Representatives, on behalf of the General Assembly and as agents of the State, hereby appear by leave of Court as amici curiae in support of Defendants and respectfully request that the Court modify and vacate its orders enjoining North Carolina Gen. Stat. §§ 14-45.1(a), 14-44, and 14-45, which together protect unborn life after twenty weeks.[1]

## INTRODUCTION

Each year in North Carolina, abortion procedures end the lives of an estimated 25,000 to 30,000 unborn persons.[2] Although North Carolina law protects unborn persons from abortion procedures after 20 weeks of pregnancy, under now-overruled precedent, those laws are enjoined by this Court. Each day that the laws remain enjoined is a day that the State's legitimate interests in preserving life are undermined.

On June 24, 2022, in a landmark decision, the Supreme Court held that the United States Constitution does not include a right to abortion within its guarantees of liberty or due process. *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022). The Supreme Court expressly overruled *Roe v. Wade*,

---

[1] The Court's Amici state that no party's counsel authored the brief in whole or in part; no party or a party's counsel contributed money that was intended to fund preparing or submitting the brief; and no person—other than the amici curiae, their members, or their counsel—contributed money that was intended to fund preparing or submitting the brief.

[2] *State Facts About Abortion: North Carolina*, Guttmacher Institute, https://www.guttmacher.org/fact-sheet/state-facts-about-abortion-north-carolina (last visited July 19, 2022).

1

410 U.S. 113 (1973), and *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833 (1992), which together formed the basis for the Court's injunction in this case.

The Supreme Court in *Dobbs* clarified that laws protecting unborn life are entitled to great deference: "A law regulating abortion, like other health and welfare laws, is entitled to a strong presumption of validity." *Id.* at 2284 (quoting *Heller v. Doe*, 509 U.S. 312, 319 (1993)). Such laws "must be sustained if there is a rational basis on which the legislature could have thought that it would serve legitimate state interests." *Id.* And States' "legitimate interests" in limiting elective abortion are numerous—"includ[ing] respect for and preservation of prenatal life at all stages of development, the protection of maternal health and safety; the elimination of particularly gruesome or barbaric medical procedures; the preservation of the integrity of the medical profession; the mitigation of fetal pain; and the prevention of discrimination on the basis of race, sex, or disability." *Id.* (internal citation omitted).

Four separate times, the Supreme Court emphasized that the issue of abortion must be returned to the "people and their elected representatives." *Id.* at 2259, 2279, 2284. Through their elected representatives, the people of North Carolina enacted laws to advance legitimate interests by limiting abortions after 20 weeks of pregnancy. Before *Dobbs*, this Court felt compelled to enjoin enforcement of these laws under *Roe* and *Casey*, to the extent the statutes prohibit "pre-viability abortions." ECF No. 84, 90. But that precedent is no more. As the Supreme Court recently affirmed, "[t]he Constitution does not prohibit the citizens of each State from regulating or prohibiting abortion. *Roe*

2

and *Casey* arrogated that authority. We now overrule those decisions and return that authority to the people and their elected representatives." *Dobbs*, 142 S. Ct. at 2284. Thus, as this Court suggested in its July 8, 2022, order for supplemental briefing, the basis for its prior injunction no longer exists because *Roe* and *Casey* are overruled. ECF No. 109.

On June 24, 2022, the General Assembly requested the Attorney General's position on vacating the injunction. After stalling for almost a month, the Attorney General announced on July 21, 2022, that despite the Supreme Court's clear holding in *Dobbs*, he will not to discharge his sworn duty to defend North Carolina law, *see* N.C. Gen. Stat. § 114-2(1), and will not move to vacate the injunction. The General Assembly therefore submits this brief as amici to answer the question posed by the Court in its July 8 order: the injunction based on *Roe* and *Casey* should be lifted and the prior judgment vacated because there no longer exists a basis in law to maintain either.

## BACKGROUND

### A. North Carolina laws protect unborn children from abortion after 20 weeks' gestation.

For over a century, the people of North Carolina—through their elected representatives—enacted laws protecting unborn children and pregnant mothers from the harms of abortion. *See* N.C. Gen. Stat. § 14-44 ("If any person shall willfully administer to any woman, either pregnant or quick with child, or prescribe for any such woman, or advise or procure any such woman to take any medicine, drug or other substance whatever, or shall use or employ any instrument or other means with intent thereby to destroy such child, he shall

3

be punished as a Class H felon"); *id.* § 14-45 ("If any person shall administer to any pregnant woman, or prescribe for any such woman, or advise and procure such woman to take any medicine, drug or anything whatsoever, with intent thereby to procure the miscarriage of such woman, or to injure or destroy such woman, or shall use any instrument or application for any of the above purposes, he shall be punished as a Class I felon").

Following *Roe*, the General Assembly enacted a companion statute that allowed abortion after 20 weeks' gestation: "[n]otwithstanding any of the provisions of G.S. 14-44 and 14-45, it shall not be unlawful, during the first 20 weeks of a woman's pregnancy, to advise, procure, or cause a miscarriage or abortion when the procedure is performed by a qualified physician licensed to practice medicine in North Carolina in a hospital or clinic certified by the Department of Health and Human Services to be a suitable facility for the performance of abortions." N.C. Gen. Stat. § 14-45.1(a). Taken together, §§ 14-45.1(a), 14-44, and 14-45 prohibit doctors from performing abortions after 20 weeks' gestation absent a medical emergency as defined by the statutes.

**B.  North Carolina statutes were enjoined under *Roe* and *Casey*, but those precedents are now overruled.**

Plaintiffs initiated this action in 2016, challenging the constitutionality of North Carolina's 20-week law under the *Roe* and *Casey*. ECF No. 1. This Court eventually granted Defendants' motion for summary judgment, ordering declaratory and injunctive relief because *Roe* and *Casey* did not allow states to prohibit abortion before viability. ECF No. 84; *Bryant v. Woodall*, 363 F. Supp. 3d 611, 629–32 (M.D.N.C. 2019). The Court's initial decision only enjoined

4

enforcement of § 14-45.1, but following a motion for clarification, the Court issued a judgment expanding the injunction to §§ 14-45.1(a), 14-44, and 14-45, to the extent that § 14-45.1(a), in conjunction with §§ 14-44 and 14-45, prohibits any pre-viability abortions. ECF No. 90, 91. The judgment specified that "[f]or purposes of this order, the word 'viability' shall be defined by reference to Supreme Court precedent." ECF No. 91 (quoting *Casey* with an internal reference to *Roe*). On appeal, North Carolina challenged only this Court's ruling on standing, which the Fourth Circuit affirmed. *Bryant v. Woodall*, 1 F.4th 280, 289 (4th Cir. 2021).

This Court's reasoning and decision rested on the Supreme Court's "viability rule" set out in *Casey*, which erroneously held that states cannot protect life in a way that places an "undue burden" on the ability to obtain an abortion before viability—or around 22 weeks' gestation. 505 U.S. at 860 (affirming the "central holding" of *Roe v. Wade*, 410 U.S. 113 (1973)); *Bryant*, 363 F. Supp. 3d at 630–31; ECF 91 (enjoining the statutes to the extent that they prohibit abortion prior to "viability" as defined in *Roe* and *Casey*).

But in *Dobbs*, upholding Mississippi's 15-week limit on abortion, the Supreme Court held that those precedents were wrongly decided: "[T]he Constitution does not confer a right to abortion. *Roe* and *Casey* must be overruled, and the authority to regulate abortion must be returned to the people and their elected representatives." *Dobbs*, 142 S. Ct. at 2279. In light of *Dobbs*, there remains no basis in law or equity for this Court to maintain the injunction against enforcement of §§ 14-45.1(a), 14-44, and 14-45. These laws together prohibit elective abortions after 20 weeks' gestation, a health-and-

5

safety regulation that is entitled to presumption of validity and which easily satisfies rational basis scrutiny.

## ARGUMENT

The answer to the Court's question in its July 8, 2022, request for supplemental briefing is simple: the current injunction is now contrary to law and should not be permitted to retain any legal force or effect. Whether or not the current parties act, this Court has the authority to modify and vacate its injunction in the interest of justice. Justice requires that the injunction be lifted and the judgment vacated.

**I.  The Court should vacate the orders and judgment enjoining enforcement of North Carolina statutes protecting unborn life. The injunction was based upon overruled precedent, and it is not just or equitable to apply it prospectively.**

District courts have inherent power to vacate injunctions, even after final judgment. *Thompson v. U.S. Dep't of Housing & Urban Dev.*, 404 F.3d 821, 825 (4th Cir. 2005) ("It has long been recognized that courts are vested with the inherent power to modify injunctions they have issued"); *see also id.* at 826 ("The proposition that a court has the authority to alter the prospective effect of an injunction in light of changes in the law or the circumstances is, of course, well established.") (quoting *Benjamin v. Jacobson*, 172 F.3d 144, 161 (2d Cir. 1999)). This "[C]ourt's ability to modify or terminate an injunction post-judgment simply expresses the inherent power possessed by courts of equity to modify or vacate their decrees as events may shape the need." *Hudson v. Pittsylvania Cty., Va.*, 774 F.3d 231, 234 (4th Cir. 2014) (citing *Holiday Inns, Inc. v. Holiday Inn*, 645 F.2d 239, 244 (4th Cir. 1981)) (cleaned up).

6

The Court's inherent power to vacate injunctions is reflected and codified in Rule 60(b)(5), which provides that "the court may relieve a party or its legal representative from a final judgment, order, or proceeding" when "applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5); *see Thompson*, 404 F.3d at 826 ("The court's inherent authority to modify . . . [an] injunction is now encompassed in Rule 60(b)(5) of the Federal Rules of Civil Procedure"). But Rule 60(b)(5) does not replace or nullify the Court's pre-existing power. "Though codified by rule, [Rule 60(b)] simply expresses the inherent power, not dependent upon rule, possessed by courts of equity to modify or vacate their decrees as events may shape the need." *Holiday Inns*, 645 F.2d at 244 (Phillips, J., dissenting) (quoting *United States v. Swift & Co.*, 286 U.S. 106, 114 (1932)).

Relief from an order or judgment under Rule 60(b) often follows a motion, but the Court can exercise its fundamental powers underlying that rule sua sponte. "The rule says that the court is to act 'on motion' and this is the usual procedure. However the court has power to act in the interest of justice in an unusual case in which its attention has been directed to the necessity for relief by means other than a motion." Wright & Miller, 11 Fed. Prac. & Proc. Civ. § 2865 (3d ed. 2022); *United States v. Jacobs*, 298 F.2d 469, 472 (4th Cir. 1961) (noting that courts typically grant relief "on motion and upon such terms as are just," but stating that Rule 60(b)(5) "need not necessarily be read as depriving the court of the power to act in the interest of justice in an unusual case in which its attention has been directed to the necessity for relief by means other than a motion"); *Fort Knox Music Inc. v. Baptiste*, 257 F.3d 108, 110–11 (2d Cir. 2001) (holding that "there can be no question" that a district court had

7

power to vacate an injunction without a motion, and "[w]hile normally relief under Rule 60(b) is sought by motion . . . nothing forbids the court to grant such relief *sua sponte*."); *Kingvision Pay-Per-View Ltd. v. Lake Alice Bar*, 168 F.3d 347, 352 (9th Cir. 1999) (holding that a court may grant relief under Rule 60(b) sua sponte); *Ransom v. Nationstar Mortgage, LLC*, No. PX 15-1647, 2016 WL 7474533, at *1–2 (D. Md. Dec. 29, 2016) (granting sua sponte relief from a prior court order, explaining that "[w]hile normally such relief is sought by the motion of a party," "nothing forbids the court to grant such relief *sua sponte*").

Whether contemplated under Rule 60(b)(5) or under the Court's inherent powers underlying that rule, the Supreme Court has recognized that vacatur of an injunction is appropriate following a significant change in decisional law. *See Agostini v. Felton*, 521 U.S. 203 (1997); *see also Horne v. Flores*, 557 U.S. 433, 447 (2009). In *Agostini*, the Supreme Court had previously held that a school program violated the Establishment Clause. 521 U.S. at 208 (citing *Aguilar v. Felton*, 473 U.S. 401 (1985)). Twelve years later, the enjoined parties filed a motion under Rule 60(b)(5), arguing that it was no longer equitable to enjoin the policy because the Court's intervening Establishment Clause decisions had undermined *Aguilar* to the point that it was no longer good law. *Id.* at 217–18. The Supreme Court held that "it is appropriate to grant a Rule 60(b)(5) motion when the party seeking relief from an injunction or consent decree can show a significant change either in factual conditions or in law." *Id.* at 215 (internal quotation marks omitted). Not only may "[a] court . . . recognize subsequent changes in either statutory or decisional law," a "court errs when it refuses to modify an injunction or consent decree in light of such changes."

8

*Id.* (citations omitted). The Supreme Court then analyzed its intervening precedents, agreed that *Aguilar* was no longer good law, and vacated the injunction that was based on overruled precedent. *Id.* at 235.

The Fourth Circuit has also recognized that a significant change in decisional law warrants vacatur of an injunction. *See Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 122 (4th Cir. 2000) (quoting *Agostini* to hold that "vacatur of an injunction under Rule 60(b)(5) . . . is required when there has been a significant change either in factual conditions or law"); *cf. L.J. v. Wilbon*, 633 F.3d 297, 304–05 (4th Cir. 2011) (noting that a significant change in decisional law may support vacatur of an injunction under Rule 60(b)(5), but finding that no such change had occurred in that case).

Here, as in *Agostini*, it is not equitable to prospectively apply the injunction because it was based entirely upon Supreme Court precedent that is "no longer good law." 521 U.S. at 235. The "essential holding" in *Roe*—as affirmed in *Casey*—was that a state's interests are not strong enough to support protecting unborn children from abortion before viability. *Casey*, 505 U.S. at 860. This Court identified *Casey*'s viability rule as the central test in evaluating North Carolina's abortion laws. *Bryant*, 363 F. Supp. 3d at 630 ("*Casey* is quite clear on this point: no matter what the state's legitimate interest in restricting abortion, this interest can never support an outright ban prior to viability"). Indeed, this Court held that under the *Roe* and *Casey* regime, "[t]he only fact material to Plaintiffs' claim is whether N.C. Gen. Stat. § 14-45.1 (a) and related statutes prohibit any pre-viability abortions." *Id.* at 629. Because §§ 14-45.1(a), 14-44, and 14-45 together prohibit abortion after

9

20 weeks—prior to viability—the Court held that "*Casey*'s clear dictate" compelled injunctive relief. *See id.* at 630; *see also* ECF No. 91 (incorporating *Casey*'s viability standard into the judgment enjoining the North Carolina laws).

But *Dobbs* overruled *Roe* and *Casey*, discarding the viability standard and rejecting the so-called right to abortion that they had manufactured. Because this Court's injunction relied extensively and exclusively upon the now-defunct "viability rule" articulated in *Casey*, it is unjust to apply the injunction prospectively. *Cf. SisterSong Women of Color Reprod. Just. Collective v. Governor of Ga.*, No. 20-13024, 2022 WL 2824904, at *1 (11th Cir. July 20, 2022) (applying *Dobbs* and vacating permanent injunction placed on Georgia's prohibition on abortions after detectable human heartbeat).

North Carolina's abortion statutes are undeniably lawful under *Dobbs*, and there is no longer any basis for an injunction to shackle the state from pursuing its legitimate interests. North Carolina's laws "regulating abortion, like other health and welfare laws, [are] entitled to a 'strong presumption of validity.'" *See Dobbs*, 142 S. Ct. at 2284 (citation omitted). Indeed, North Carolina's laws "must be sustained if there is a rational basis on which the legislature could have thought that it would serve legitimate state interests." *See id.* These "legitimate interests" in abortion regulations "include respect for and preservation of prenatal life at all stages of development, the protection of maternal health and safety; the elimination of particularly gruesome or barbaric medical procedures; the preservation of the integrity of the medical profession; the mitigation of fetal pain; and the prevention of discrimination

on the basis of race, sex, or disability." *Id.* (citation omitted). North Carolina's law advances all of these interests by limiting abortion-on-demand after 20 weeks' gestation. For the same reasons the Supreme Court upheld Mississippi's 15-week law in *Dobbs*, North Carolina's 20-week law is constitutional.

The Court should exercise its inherent power to vacate the injunction and judgment, following the Supreme Court's emphatic instruction to return the issue of abortion to the "people and their elected representatives." *Id.* at 2259, 2279, 2284.

## II. If this Court is not inclined to vacate the injunction sua sponte yet no party will defend the laws, the Court should allow amici an opportunity to intervene to file a Rule 60(b)(5) motion.

As explained above, it is neither equitable nor just to maintain the current injunction, and this Court has inherent power to vacate the injunction sua sponte, without a formal motion under Rule 60(b). But if this Court is not inclined to act without a motion, and if Defendants' legal representative through the Department of Justice refuses to discharge the Attorney General's sworn duty to defend the state's laws by moving to vacate the injunction, this Court should allow amici an opportunity to intervene for the purpose of filing a motion under Rule 60(b)(5).

The General Assembly has significantly protectable interests in the subject matter of this action; and the resolution of this suit, if Plaintiffs prevail, will impair those interests and the General Assembly's ability to protect them. The General Assembly has both an interest in defending the constitutionality

11

of its laws and the legal authority to do so. Specifically, "[t]he Speaker of the House of Representatives and the President Pro Tempore of the Senate, as agents of the State, by and through counsel of their choice, including private counsel, shall jointly have standing to intervene on behalf of the General Assembly as a party in any judicial proceeding challenging a North Carolina statute . . . ." N.C. Gen. Stat. § 1-72.2.

On June 23, 2022, one day before the Supreme Court decided *Dobbs*, it issued an opinion in favor of Proposed-Intervenors in *Berger v. North Carolina State Conference of the NAACP*, 142 S. Ct. 2191, 2203 (2022), granting the same proposed-amici in this matter intervention to defend the constitutionality of another North Carolina statute because proposed-intervenors are the state's statutorily authorized agents. Simply put, "North Carolina has expressly authorized the legislative leaders to defend the State's practical interests in litigation" involving the constitutionality of state laws. *Id.* at 2202.

Sadly, all indicators suggest that Defendants will fail to defend North Carolina's permissible and constitutional laws by refusing to move to vacate the injunction currently preventing their enforcement. On July 21, 2022, the Attorney General—who represents the existing Defendants—issued a press release and other public statements telling North Carolinians that he will *not* move to lift the injunction in this case, despite the Supreme Court's decision in *Dobbs* making clear that the injunction is erroneous as a matter of law.[3] If the

---

[3] Press Release, Josh Stein, *Attorney General Josh Stein Will Not Ask Court to Limit Women's Freedom* (July 21, 2022), https://ncdoj.gov/attorney-general-josh-stein-will-not-ask-court-to-limit-womens-freedom/; *see also* @JoshStein_,

12

Attorney General will not act, amici will. Through this brief (or by moving to intervene if necessary), the legislative leaders "give voice to a different perspective" than the Attorney General because they "are not burdened by misgivings about the law's wisdom" and "will focus on defending the law vigorously on the merits." *Id.* at 2205.

In short, the existing Defendants' legal representative publicly opposes the statutes he is tasked with defending. On the other hand, the General Assembly offers this vigorous defense of the law and *Dobbs'* application to the current injunction. Justice requires no less for defending laws duly enacted by the elected representatives of the people. Thus, if the Court is not inclined to vacate the injunction sua sponte, the General Assembly would welcome the Court's invitation to intervene and file a Rule 60(b)(5) motion to ensure that the people of North Carolina's interests are adequately represented.

#### CONCLUSION

For these reasons, the Court should vacate all orders and judgments in this case which enjoin or declare unlawful North Carolina's pro-life statutes.

---

Twitter (July 21, 2022, 10:29 AM ), https://twitter.com/JoshStein_/status/1550125817639735296?s=20 ("The NC Department of Justice will not move to have the injunction lifted in Bryant v. Woodall. My office will not take action that would restrict women's ability to make their own reproductive health care decisions.").

Respectfully submitted this 27th day of July, 2022.

| | |
|---|---|
| */s/Denise M. Harle* <br> Denise M. Harle* <br> GA Bar No. 176758 <br> Alliance Defending Freedom <br> 1000 Hurricane Shoals Rd., NE, Suite D1100 <br> Lawrenceville, GA 30043 <br> Telephone: (770) 339-0774 <br> dharle@adflegal.org <br><br> J. Caleb Dalton* <br> ALLIANCE DEFENDING FREEDOM <br> 440 First Street NW, Suite 600 <br> Washington, DC 20001 <br> Telephone: (202) 393-8690 <br> cdalton@ADFlegal.org <br><br> *Counsel for Amici* <br><br> **Special Appearance Pursuant to* *Local Civil Rule 83.1(d)* | */s/ Anthony Biller* <br> Anthony Biller <br> NC Bar No. 24,117 <br> ENVISAGE LAW <br> 2601 Oberlin Road, Suite 100 <br> Raleigh, NC 27622 <br> Telephone: (919) 755-1317 <br> ajbiller@envisage.law <br><br> *Local Civil Rule 83.1 Counsel for Amici* |

## CERTIFICATE OF SERVICE

I hereby certify that on July 27, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Anthony Biller*
Anthony Biller

*Counsel for Amici*

15

Case 1:16-cv-01368-WO-LPA   Document 117   Filed 07/29/22   Page 19 of 20

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief contains 3,619 words and was prepared in compliance with the requirements of LR7.3.

*/s/ Anthony Biller*
Anthony Biller

*Counsel for Amici*