IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
AMY BRYANT, M.D., BEVERLY GRAY,   )
M.D., ELIZABETH DEANS, M.D.,      )
and PLANNED PARENTHOOD SOUTH      )
ATLANTIC,                         )
                                  )
               Plaintiffs,        )
                                  )
     v.                           )      1:16CV1368
                                  )
JIM WOODALL, SATANA DEBERRY,      )
ELEANOR E. GREENE, and            )
KODY KINSLEY, each in             )
their official capacity,          )
                                  )
               Defendants.        )
```

## ORDER

The issue before this court is whether to lift its injunction preventing enforcement of three North Carolina statutes to the extent those statues prohibit pre-viability abortions. This court will vacate its injunction because it was based on Supreme Court precedent that has since been reversed.

I.  **PROCEDURAL HISTORY**

On May 24, 2019, this court entered judgment in favor of Plaintiffs, declared N.C. Gen. Stat. § 14-45.1(a) unconstitutional, and enjoined enforcement of N.C. Gen. Stat. §§ 14-45.1(a), 14-44, and 14-45 to the extent they prohibited pre-viability abortions. (Doc. 91.) This court's analysis was based upon Supreme Court precedent, including Planned Parenthood

of Southeastern Pennsylvania v. Casey, 505 U.S. 833 (1992). (See, e.g., Doc. 91.) On June 24, 2022, the Supreme Court decided Dobbs v. Jackson Women's Health Organization, 142 S. Ct. 2228 (2022). In Dobbs, the Court held that "[t]he Constitution does not prohibit the citizens of each State from regulating or prohibiting abortion. [Roe v. Wade, 410 U.S. 113 (1973)] and Casey arrogated that authority. We now overrule those decisions and return that authority to the people and their elected representatives." Id. at 2284. In light of that ruling, this court issued an order on July 8, 2022, that stated, "the injunctive relief granted in this case may now be contrary to law" and asked for the parties "to submit briefs setting forth their respective positions on whether the injunction retains any legal force and effect, and whether this court should enter an order pursuant to, inter alia, Federal Rule of Civil Procedure 60(b)(5)." (Doc. 109 at 2.)[1]

Subsequently, Philip E. Berger, in his official capacity as President Pro Tempore of the North Carolina Senate, and Timothy K. Moore, in his official capacity as Speaker of the North Carolina House of Representatives, on behalf of the General Assembly and as agents of the State (together, "Legislative

---

[1] All page citations in this Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

Amici"), filed an Unopposed Motion for Leave to File a Brief as Amici Curiae. (Doc. 114.) This court granted the motion, (Doc. 116), and Legislative Amici filed a brief in support of lifting the injunction, (Amici Br. of Legislative Amici in Supp. of Granting Relief from J. ("Legislative Br.") (Doc. 117)). On August 8, 2022, Plaintiffs Amy Bryant, M.D., Beverly Gray, M.D., Elizabeth Deans, M.D., and Planned Parenthood South Atlantic filed their brief, (Pls.' Br. in Resp. to the Court's July 8, 2022 Order Opposing Relief Pursuant to Fed. R. Civ. P. 60(b) ("Pls.' Br.") (Doc. 119)), as did Defendants Jim Woodall, Satana Deberry, Eleanor E. Greene, and Kody Kinsley,[2] (Defs.' Br. (Doc. 121)). This matter is now ripe for adjudication.

## II. ANALYSIS

Plaintiffs' and Defendants' arguments illustrate why this injunction must be dissolved and dismissed. Defendants argue, referring to Dobbs, that "[l]ifting the injunction will likely worsen the public confusion that is inevitable from such a

---

[2] Effective January 1, 2022, Kody Kinsley was appointed as the Secretary of the North Carolina Department of Health and Human Services. (Defs.' Br. Pursuant to Order of the Court ("Defs.' Br.") (Doc. 121) at 2 n.1.) Secretary Kinsley is the successor to former Secretary Mandy K. Cohen, MD, MPH. Pursuant to Federal Rule of Civil Procedure 25(d), Secretary Kinsley is automatically substituted as a party defendant for all claims asserted against Cohen in her official capacity as former Secretary of the North Carolina Department of Health and Human Services.

- 3 -

profound reversal in the law." (Id. at 8.) Plaintiffs similarly argue that "the injunction preserves Plaintiffs' ability to provide critical healthcare services" and "[l]ifting the injunction would create apprehension and uncertainty among providers about what kind of patient care they can legally provide in North Carolina." (Pls.' Br. (Doc. 119) at 14.) This court disagrees. Most notably, this injunction does not preserve Plaintiffs' ability to provide services contrary to North Carolina law; under Dobbs, there is now no constitutional right to a pre-viability abortion, thus depriving the injunction of any constitutional basis from which to enjoin the challenged North Carolina laws regulating abortion. Contrary to the parties' arguments, leaving the injunction in place wrongfully heightens confusion because to do so is misleading as to the effect of Dobbs. If, as Plaintiffs argue, providers are providing services in accordance with the terms of the injunction, (see id. at 14 ("[T]he injunction preserves Plaintiffs' ability to provide critical healthcare services to North Carolina residents . . . .")), then those providers are acting contrary to North Carolina law. Neither this court, nor the public, nor counsel, nor providers have the right to ignore the rule of law as determined by the Supreme Court.

- 4 -

None of the parties argue that the injunction remains legally enforceable, nor could they. The injunction was entered under the authority of Roe and Casey; that precedent has been overruled by Dobbs. Because the power to regulate abortion has been returned to the states, the parties' suggestion that this court's injunction is having an effect, whether preventing "confusion," (Defs.' Br. (Doc. 121) at 8), or "preserv[ing] Plaintiffs' ability to provide critical healthcare services," (Pls.' Br. (Doc. 119) at 14), suggests the parties are improperly relying upon, and asserting, an injunction that is no longer lawful.

This court declines the parties' suggestion to ignore the Supreme Court's binding constitutional authority. The injunction in this case will be dissolved and dismissed. N.C. Gen. Stat. §§ 14-45.1(a), 14-44, and 14-45 will no longer be enjoined by this court and, absent some other authority not previously raised to this court, those statutes are constitutional acts by the State of North Carolina.

In lifting the injunction, this court rejects the parties' two principal arguments: (1) Plaintiffs' argument that this court does not have the authority to sua sponte lift the injunction, and (2) Defendants' argument that there is no

- 5 -

indication that lifting the injunction would have any practical effect on prosecutions. Each is addressed in turn.

   A.   Court's Authority to Lift Injunction Sua Sponte

Plaintiffs argue that "[a]bsent a party's motion, this Court cannot re-open this case and vacate the judgment or injunction." (Id. at 9.) Critical to their argument is the text of Federal Rule of Civil Procedure 60(b). Rule 60(b)(5) states that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding" if "it is based on an earlier judgment that has been reversed or vacated." Fed. R. Civ. P. 60(b)(5) (emphasis added). Plaintiffs argue that the words "on motion" in the Rule establish that a prerequisite to Rule 60(b) relief is a motion from a party. (Pls.' Br. (Doc. 119) at 9–10.) Plaintiffs insist this reading of the Rule is strengthened by the contrasting language in Rule 60(a), which expressly allows the court to alter clerical mistakes, oversights, and omissions "on its own." (Id. at 10 (quoting Fed. R. Civ. P. 60(a)).)

Plaintiffs' interpretation of Rule 60(b) is not the law in the Fourth Circuit. Instead, "the Fourth Circuit is one of many jurisdictions to hold that Rule 60(b)'s 'on motion' language does not necessarily 'depriv[e] the court of the power to act in the interest of justice in an unusual case in which its

- 6 -

Case 1:16-cv-01368-WO-LPA   Document 122   Filed 08/17/22   Page 6 of 14

indication that lifting the injunction would have any practical effect on prosecutions. Each is addressed in turn.

   A.   Court's Authority to Lift Injunction Sua Sponte

Plaintiffs argue that "[a]bsent a party's motion, this Court cannot re-open this case and vacate the judgment or injunction." (Id. at 9.) Critical to their argument is the text of Federal Rule of Civil Procedure 60(b). Rule 60(b)(5) states that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding" if "it is based on an earlier judgment that has been reversed or vacated." Fed. R. Civ. P. 60(b)(5) (emphasis added). Plaintiffs argue that the words "on motion" in the Rule establish that a prerequisite to Rule 60(b) relief is a motion from a party. (Pls.' Br. (Doc. 119) at 9–10.) Plaintiffs insist this reading of the Rule is strengthened by the contrasting language in Rule 60(a), which expressly allows the court to alter clerical mistakes, oversights, and omissions "on its own." (Id. at 10 (quoting Fed. R. Civ. P. 60(a)).)

Plaintiffs' interpretation of Rule 60(b) is not the law in the Fourth Circuit. Instead, "the Fourth Circuit is one of many jurisdictions to hold that Rule 60(b)'s 'on motion' language does not necessarily 'depriv[e] the court of the power to act in the interest of justice in an unusual case in which its

attention has been directed to the necessity for relief by means other than a motion.'" Ransom v. Nationstar Mortg. LLC, Civil Action No. PX 15-1647, 2016 WL 7474533, at *1 (D. Md. Dec. 29, 2016) (alteration in original) (quoting United States v. Jacobs, 298 F.2d 469, 472 (4th Cir. 1961)); see also Patton v. Maryland, Civil Action Nos., AW-09-2876, AW-08-1820, 2013 WL 1209466, at *3–4 (D. Md. Mar. 22, 2013). This is decidedly the majority rule amongst the circuits, with at least five others adopting it and only two rejecting it. Compare Pierson v. Dormire, 484 F.3d 486, 491 (8th Cir. 2007); Fort Knox Music, Inc. v. Baptiste, 257 F.3d 108, 111 (2d Cir. 2001); Kingvision Pay-Per-View Ltd. v. Lake Alice Bar, 168 F.3d 347, 351–52 (9th Cir. 1999); Simer v. Rios, 661 F.2d 655, 663 n.18 (7th Cir. 1981); McDowell v. Celebrezze, 310 F.2d 43, 44 (5th Cir. 1962) (per curiam), with United States v. Pauley, 321 F.3d 578, 581 (6th Cir. 2003); Dow v. Baird, 389 F.2d 882, 884-85 (10th Cir. 1968). Plaintiffs characterize the relevant language in Jacobs, the Fourth Circuit case adopting the majority view, as "dicta" and "not binding law." (Pls.' Br. (Doc. 119) at 12.) Even assuming, arguendo, that the language is dicta, it is dicta this court finds persuasive and will follow here because "justice," in this case adherence to a Supreme

- 7 -

Case 1:16-cv-01368-WO-LPA   Document 122   Filed 08/17/22   Page 7 of 14

Court decision, "so requires."[3] Chaney v. United States, Cr. No. 3:08-773, 2015 WL 1733804, at *2 (D.S.C. Apr. 16, 2015) ("[T]he Court of Appeals for the Fourth Circuit has determined that . . . courts are not prohibited from amending a judgment or order sua sponte when justice so requires.").

---

[3] Plaintiffs maintain that continuing to apply "the injunction does not affect the equities" and relief from the injunction would not lead to "an 'equitable' outcome." (Pls.' Br. (Doc. 119) at 17.) Plaintiffs instead argue that "Amici have a readily available remedy here—to take their concerns back to the halls of the General Assembly and, enact a new law following the proper legislative course." (Id. at 17 n.5.)

Contrary to Plaintiffs' argument, continuing to apply the injunction does negatively affect the equities and the interests of justice because it would perpetuate a now patently unlawful order. See Sys. Fed'n No. 91, Ry. Emps.' Dep't, AFL-CIO v. Wright, 364 U.S. 642, 647 (1961) ("[T]he court cannot be required to disregard significant changes in law or facts if it is 'satisfied that what it was been doing has been turned through changing circumstances into an instrument of wrong.'" (quoting United States v. Swift & Co., 286 U.S. 106, 114–15 (1932))). To do so would inequitably prevent the enforcement of a law that aims to "protect[] unborn children and pregnant mothers." (Legislative Br. (Doc. 117) at 7.) That law was already passed by the General Assembly "following the proper legislative course." (See Pls.' Br. (Doc. 119) at 17 n.5.) There is no need for Legislative Amici to "go back to the halls of the General Assembly and, enact a new law," (see id.), when what is legally preventing the existing laws from being enforced is this court's injunction which will now be lifted. Plaintiffs—instead of seeking the continuation of an unlawful injunction—can avail themselves of their own advice; they can seek to prevent enforcement of these statutes by encouraging the General Assembly to repeal or modify them. That is consistent with Dobbs' mandate that the issue of abortion regulation will no longer be primarily decided by federal courts but instead "returned to the people and their elected representatives." Dobbs, 142 S. Ct. at 2279.

Therefore, this court concludes that in this "unusual case" it has authority to sua sponte lift the permanent injunction because justice so requires it, and this court's "attention has been directed to the necessity for relief by means other than a motion." Jacobs, 298 F.2d at 472. Such relief is also procedurally proper because the parties had advance notice and the opportunity to respond prior to this court formally lifting the injunction. (Doc. 109); see Patton, 2013 WL 1209466, at *4 (noting that the cases allowing for sua sponte action under Rule 60(b) were "premised on the fact that the parties had notice of the district courts' actions before the courts issued new orders").

B.  **Practical Effect on Prosecutions**

Defendants argue "there is no indication that lifting the injunction would have any practical effect on prosecutions" because the two district attorney defendants "have no intention to exercise that enforcement authority, nor has any other district attorney with enforcement responsibility over the statute indicated they would either." (Defs.' Br. (Doc. 121) at 7, 9.)

This is not a persuasive reason to maintain the injunction. Notwithstanding Defendants' statements, "the likelihood of future prosecution will always be difficult to predict." Bryant

- 9 -

v. Woodall, 1 F.4th 280, 288 (4th Cir. 2021). Although the Fourth Circuit made that statement in the context of a standing analysis, it has relevance here as well. The fact that there is presently no "indication that any . . . district attorney with a reproductive health facility in his or her jurisdiction [that] would seek to enforce the statute," (Defs.' Br. (Doc. 121) at 7), does not mean there will not be in the future. District attorneys' decisions as to what statutes to enforce may change— especially as the district attorneys themselves change—and prior "unofficial and non-binding statements such as these do not guarantee that prosecutors might not tomorrow bring their interpretation more in line with the statutes' plain language." Bryant, 1 F.4th at 289 (cleaned up) (quoting N.C. Right to Life v. Bartlett, Inc., 168 F.3d 705, 711 (4th Cir. 1999)). Indeed, contrary to Defendants' insistence that no prosecutions will occur if the injunction is lifted, Plaintiffs expressly acknowledge that "lifting the injunction risks . . . enforcement from individual prosecutors within North Carolina." (Pls.' Br. (Doc. 119) at 15.) Also casting doubt on Defendants' insistence that lifting the injunction would have no practical effect is that new reproductive health facilities may open in different jurisdictions, and "two . . . defendants (Greene and [Kinsley], of the North Carolina Medical Board and the Department [of

Health and Human Services], respectively) have made no representations of their intent to enforce the challenged statutes."[4] Bryant, 1 F.4th at 288.

And even assuming, arguendo, that lifting the injunction would not lead to prosecutors bringing charges pursuant to the laws at issue, that fact weighs in favor of lifting the permanent injunction. Longstanding Fourth Circuit precedent holds that "it is elementary that a court of equity will not grant an injunction to restrain one from doing what he is not attempting and does not intend to do." Blease v. Safety Transit Co., 50 F.2d 852, 856 (4th Cir. 1931); accord New Standard Pub. Co. v. FTC, 194 F.2d 181, 183 (4th Cir. 1952). Though both parties express fear that "[l]ifting the injunction would create apprehension and uncertainty," (Pls.' Br. (Doc. 119) at 14; see also Defs.' Br. (Doc. 121) at 8), "[i]njunctions will not be

---

[4] Defendants insist that "[b]ecause the challenged statute is one that carries criminal penalties, the district-attorney defendants are the only defendants who are authorized to enforce violations of it." (Defs.' Br. (Doc. 121) at 6.) Plainly, the Fourth Circuit was not so convinced that the North Carolina Medical Board and the Department of Health and Human Services were deprived of any role, indirect or otherwise, in the statutes' enforcement. See Bryant, 1 F.4th at 288. In fact, Defendants' statement that the district attorney defendants are "[t]he only Defendants who have any direct enforcement role with respect to the challenged statute," (Defs.' Br. (Doc. 121) at 9 (emphasis added)), explicitly leaves open the possibility that other defendants may have some form of indirect enforcement authority.

issued merely to allay the fears and apprehensions or to soothe the anxieties of the parties," Howerton v. Grace Hosp., Inc., Civ.A. No. SH-C-90-187, 1991 WL 104193, at *5 (W.D.N.C. Mar. 14, 1991) (internal quotation marks omitted) (quoting John Lemmon Films, Inc. v. Atl. Releasing Corp., 617 F. Supp. 992, 996 (W.D.N.C. 1985)).

### C. Request for Leave to Amend Complaint

A footnote near the end of Plaintiffs' brief "request[s] that, if the Court lifts the injunction, it give Plaintiffs leave to amend its complaint to raise additional claims." (Pls.' Br. (Doc. 119) at 17–18 n.6.) This bare request is not accompanied by a motion or proposed amended complaint.

This court will deny the request without prejudice because it fails to comply with either the Federal Rules of Civil Procedure or this district's local rules. Under the Federal Rules of Civil Procedure, a "requested leave to amend only in a footnote of their response . . . d[oes] not qualify as [a] motion[] for leave to amend." Cozzarelli v. Inspire Pharm. Inc., 549 F.3d 618, 630 (4th Cir. 2008) (citing Rules 7(b) and 15(a)). Moreover, "this district's local rules require a proposed amended pleading to be attached to any motion for leave to amend a pleading." Allen v. Rentgrow, Inc., No. 1:20cv256, 2020 WL 4368651, at *3 (M.D.N.C. July 30, 2020) (citing LR 15.1).

- 12 -

Because Plaintiffs have failed to comply with either of these requirements, the appropriate course of action is to deny the request without prejudice. See id. at *4 ("[Plaintiff] has not made a proper motion to amend, nor has he attached a proposed amended complaint. Thus, his request for leave to amend will be denied without prejudice at this time.").

### D. Request for Twenty-Four Hour Stay

Plaintiffs assert that the "procedure required to perform certain abortions safely after the twentieth week of pregnancy is a two-day procedure," and "it is medically inadvisable for a patient to begin but then not complete the second day of the procedure." (Pls.' Br. (Doc. 119) at 17–18.) Plaintiffs therefore request that any order lifting the injunction be preceded by at least twenty-four hours' notice. (Id. at 18.)

This request is denied. All parties in this case have undoubtedly been aware of Dobbs since it was decided nearly two months ago. From that moment, the only reasonable conclusion to draw regarding this court's injunction was that it was patently contrary to the rule of law as determined by the Supreme Court. From then on, any reliance on this court's injunction to continue providing abortions after twenty weeks of pregnancy was not reasonable reliance. This court will not delay lifting its injunction to accommodate such unreasonable reliance.

- 13 -

Case 1:16-cv-01368-WO-LPA   Document 122   Filed 08/17/22   Page 13 of 14

**III. CONCLUSION**

For the foregoing reasons, this court finds the injunction described in this court's previous Orders, (Docs. 84, 90), and the Judgment, (Doc. 91), should be vacated.

**IT IS THEREFORE ORDERED** that the injunction described in the summary judgment order, (Docs. 84, 90), and the Judgment, (Doc. 91), is hereby **VACATED** and **DISSOLVED,** and the injunctive relief is **DISMISSED.**

This the 17th day of August, 2022.

_____
United States District Judge